UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE EXTRADITION OF MARIANNE SMYTH | ) ) ) ) ) ) | 1:24-mc-00084-JCN |

**MEMORANDUM OF DECISION, CERTIFICATION, AND ORDER
ON EXTRADITION REQUEST**

The Government of the United Kingdom requests the extradition of Marianne Smyth on various charges pending against Ms. Smyth in the United Kingdom. The United Kingdom asserts and has demonstrated that Ms. Smyth is charged with four counts of fraud by abuse of position, in violation of Sections 1 and 4 of the United Kingdom's Fraud Act of 2006, and four counts of theft in violation of Northern Ireland's Theft Act of 1969.

After a hearing on the extradition request,[1] the Court finds sufficient evidence to sustain the charges and certifies the same to the Secretary of State in accordance with 18 U.S.C. § 3184.

**DISCUSSION**

**A. The Extradition Process**

International extraditions are governed by statute, 18 U.S.C. § 3184, and by treaty. "Extradition is primarily an executive function with a limited role for the judiciary under the extradition statute." *Matter of Extradition of D'Monte*, No. 22-mh-230-MDM, 2023

---

[1] The Court conducted the hearing on April 17, 2024. For the reasons stated on the record, the Court allowed Ms. Smyth until May 1, 2024, to determine whether she could identify and secure certain evidence and, if so, file a motion to reopen the hearing to present the additional evidence. Ms. Smyth did not move to reopen the hearing.

WL 7402921, at *2 (D. P. R. Nov. 9, 2023). A court's role is to determine whether the judicial officer is authorized to conduct the hearing, the court has jurisdiction over the individual, there is a treaty in full force and effect, the alleged crimes are covered by the treaty, and the evidence supports a finding of probable cause as to each charge for which extradition is sought. *Matters of Extradition of Taylor*, 484 F.Supp.3d 13, 15 (D. Mass. 2020) (citing *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925)). Ultimately, "[t]he purpose of an extradition hearing is to determine 'whether there is evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or, in other words, whether there is probable cause.'" *Matter of Extradition of Ahn*, 602 F.Supp.3d 1304, 1309 (C.D. Ca. 2022) (quoting *Vo v. Benov*, 447 F.3d 1235, 1237 (9th Cir. 2006)).

If all the requirements for extradition are satisfied, the court must certify to the Secretary of State that the evidence is sufficient to sustain the charges, provide the Secretary of State with the record of the evidence presented before the court, and commit the individual to custody until the Secretary of State makes a final extradition decision. 18 U.S.C. § 3184. The sole issue Ms. Smyth contests is the sufficiency of the evidence.

**B. Jurisdiction of Judicial Officer**

Under the extradition statute, a "magistrate judge authorized so to do by a court of the United States" may conduct an extradition hearing. 18 U.S.C. § 3184. Here, the undersigned was specifically authorized to conduct the hearing. (Order, ECF No. 26.) Furthermore, "the jurisdiction of federal magistrate judges in extradition proceedings has been upheld as consistent with Article III of the Constitution." *Matter of Extradition Rodriguez*, 444 F. Supp. 2d 876, 882 (N.D. Ill. 2006) (citing *Ward v. Rutherford*, 921 F.2d

2

286, 289 (D.C. Cir. 1990)). Finally, the Federal Magistrates Act provides in part that a magistrate judge has "all powers and duties conferred or imposed upon United States commissioners," 28 U.S.C. § 636(a)(1), "[a]nd prior to the Act, extradition proceedings were conducted by commissioners." *Austin v. Healy*, 5 F.3d 598, 602 (2nd Cir. 1993).

### C. Jurisdiction of the Court over Ms. Smyth

Ms. Smyth does not challenge that she is charged with the offenses for which extradition is requested. The Court may conduct extradition proceedings for any person found within the Court's jurisdiction. 18 U.S.C. § 3184. Ms. Smyth was arrested in the District of Maine.

### D. Extradition Treaty/Scope of Treaty

For extradition to be available, an extradition treaty must exist between the United States and the country requesting extradition. 18 U.S.C. § 3181. The record establishes the existence of the Extradition Treaty between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland, and related Exchanges of Letters, signed at Washington March 31, 2003, and the Instrument contemplated by Article 3(2) of the Agreement on Extradition between the United States and the European Union signed June 25, 2003, as to the application of the Extradition Treaty between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland signed March 31, 2003, with annex and related Exchanges of Notes, signed at London December 16, 2004. (Declaration of Stacy Hauf ¶ 1, ECF No. 3-1.) Each of the offenses with which Ms. Smyth has been charged has a potential sentence of more than one year in prison in the

United Kingdom (*see* Exhibit 1 to Complaint at 68, 69) and, if Ms. Smyth engaged in the conduct alleged in the formal charges in the United States, the charges in the United States would also have the potential for a prison sentence exceeding one year.[2] The offenses, therefore, are covered under Article 2 of the Annex. (Declaration of Stacy Hauf ¶ 5.)

**E.  Sufficiency of Evidence**

For the Court to certify the requested extradition warrant, the Court must find "sufficient evidence to sustain the charge[s]" in the United Kingdom. 18 U.S.C. § 3184. In other words, the Court must find "reasonable ground[s]" to believe that Ms. Smyth committed the crimes with which she has been charged. *Fernandez*, 268 U.S. at 312. The standard is similar to the probable cause standard that governs preliminary examinations conducted in accordance with Federal Rule of Criminal Procedure 5.1. *Ward*, 921 F.2d at 287.

Ms. Smyth has been charged with four counts of fraud by abuse of position, in violation of Sections 1 and 4 of the United Kingdom's Fraud Act of 2006, and four counts of theft in violation of Northern Ireland's Theft Act of 1969. Relevant here, a person commits fraud by abuse of position if the person (a) "occupies a position in which he is expected to safeguard or not act against the financial interests of another person," (b) "dishonestly abuses that position," and (c) "intends, by means of the abuse of that position, to make a gain for himself or another, or to cause loss to another or to expose another to a

---

[2] As the Government notes, Ms. Smyth's alleged conduct would satisfy the elements of multiple felony offenses in the United States. (*See* Government's Memorandum of Law in Support of Extradition at 17-18, ECF No. 15.)

risk or loss." (Fraud Act 2006, Exhibit 1 to Complaint at 75, ECF No. 3-1.) A person commits theft under the Theft Act of 1969 if the person "dishonestly appropriates property belonging to another with the intention of permanently depriving the other of it." (Theft Act (Northern Ireland) 1969, Exhibit 1 to Complaint at 71, ECF No. 3-1.)

The record evidence includes statements by the Detective Constable in charge of the investigation of Ms. Smyth's conduct regarding the results of the investigation, statements from the victims of Ms. Smyth's alleged conduct, a statement from a Principal Public Prosecutor in Northern Ireland, and other documents supporting the charges. (*See* Exhibit 1 to Complaint). The evidence reflects the following:

1. Ms. Smyth was an independent mortgage advisor. In the position, Ms. Smyth was expected to act in the financial interests of her clients.

2. In 2009, after she arranged for a mortgage for an individual, Ms. Smyth offered him an opportunity to invest in a high interest account with the Commonwealth Bank of Australia. After the individual and his wife met with Ms. Smyth, they gave Ms. Smyth a check addressed to her in the amount of £20,000, with the understanding that Ms. Smyth was going to invest the money. According to bank records reviewed by investigators, on the day she received the check, Ms. Smyth deposited the funds into an account in her name. There is no evidence that Ms. Smyth invested the funds for the individuals, and the funds have not been returned to them.

3. In 2008, after she arranged for a mortgage for another individual, Ms. Smyth offered the person an investment opportunity; she told the person that he would

5

receive £400/month on an investment of £20,000. The individual provided Ms. Smyth with a check in the amount of £20,000 made payable to her. Although the person received what purported to be a statement with an account number from the Commonwealth Bank of Australia, when he contacted the bank, he learned that the account never existed. While the individual received several £400 monthly payments, he received no payments after June 2009. Investigators report that bank records reflect that £20,000 was deposited into Ms. Smyth's account in October 2008, and that the amount of £400 was transferred out of the account each month for several months in 2008 and 2009. There is no evidence that Ms. Smyth invested the funds for the person, and the funds have not been returned to him.

4. Ms. Smyth arranged for a mortgage for another individual in and around 2005. In 2008, Ms. Smyth offered the individual an opportunity to invest in a high interest-bearing account. Through two transactions, the person transferred a total of £23,000 into an account owned by Ms. Smyth. When the person requested a release of £5,000 from the account in May 2009, Ms. Smyth advised that it might take several days to release the funds. The individual did not receive the funds and, after initially offering explanations for the delayed release of the funds, Ms. Smyth did not respond to the individual's inquiries after June 2009. Investigators report that Ms. Smyth's bank account was closed in October 2010. There is no evidence that Ms. Smyth invested the funds for or returned the funds to the individual.

5. In 2008 or 2009, Ms. Smyth arranged for a mortgage for another individual. Subsequently, the person discussed with Ms. Smyth the possibility of investing in other property with Ms. Smyth. In 2008, the individual provided Ms. Smyth with one check made payable to her in the amount of £5,000, and another check in the amount of £67,570. Ms. Smyth arranged for the individual and his wife to sign what they understood was a contract for the purchase of the property. Ms. Smyth advised that she would collect the monthly rent and deposit £425 each month in an account owned by the individual and his wife. The amount was deposited into their account monthly from August 2008 through May 2009. They have not received any further payments. Investigators report that the property was never conveyed to Ms. Smyth or the individual and his wife. According to investigators, bank records reflect that £67,570 was deposited in Ms. Smyth's bank account in August 2008. The total amount of £72,570 has never been returned by Ms. Smyth.

The evidence presented regarding Ms. Smyth's interactions with and transactions involving the individuals referenced above is sufficient to sustain the four fraud charges and the four theft charges that are the subject of the extradition request.

## CONCLUSION

Following a review of the evidence, after consideration of the relevant factors, and based on the findings set forth above, I certify the extradition of Marianne Smyth to the United Kingdom on all charges/offenses for which extradition is requested. I commit

Marianne Smyth to the custody of the United States Marshal pending a decision on extradition by the Secretary of State pursuant to 18 U.S.C. § 3186.

The Clerk shall forward a certified copy of this decision and order, the transcript of the extradition hearing, and all evidence presented in the matter, to the Secretary of State.

## **NOTICE**

Any objections to the Order shall be filed in accordance with Federal Rule of Civil Procedure 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 9th day of May, 2024.